YOUNG FARMS LIMITED, a limited partnership, Phillip O. Boyer, Virgil Condon, Boyd J. Farr, Homer L. Hale, Marie M. Irvine, G. Kenneth Johnson, Kenneth W. Jones, Robert C. Newman, Toffie Sawaya, Richard Stover, William Tingey, James E. Watts, Ralph M. Wright, limited partners, Plaintiffs and Appellants,

v.

RICHTRON, INC., a Utah corporation, Paul H. Richins, Aral Wesley Allred and Sarah Elaine Allred, his wife, and Bank of Utah, a Utah corporation, Defendants,

Leo H. Richins, Intervenor.

No. 19902.

Supreme Court of Utah.

June 14, 1989.

Joseph S. Knowlton, Salt Lake City, for plaintiffs and appellants.

John T. Anderson, Salt Lake City, for defendants.

Leo H. Richins, Kaysville, pro se.

HOWE, Associate Chief Justice:

This action was brought by Young Farms Limited, a Utah limited partnership, and all of its limited partners against the withdrawn general partner, Richtron, Inc., and Paul Richins, its president, for an accounting, damages, and a determination of contract rights in the limited partnership's properties. The trial court granted a partial summary judgment decreeing that Richtron had no right, title, or interest in the properties and dismissed Richtron and Richins from the suit. This appeal concerns only the parties' rights to a deposit of $10,431 paid into court by Richtron which is being held by the trial court pending our determination.

Young Farms Limited was formed for the purposes of acquiring and holding for investment certain undeveloped real property and farmland in Duchesne County, Utah. The limited partnership properties were purchased by Young Farms from its general partner, Richtron, Inc., on a real estate contract dated November 15, 1974. Richtron had previously purchased the properties on contract from Robert and Betty Jean Young. The Youngs had previously acquired one of the properties on contract from defendants Aral Wesley Allred and Sarah Elaine Allred. Thus, there were three real estate contracts in connection with the limited partnership's properties: the Allred–Young contract, the Young–Richtron contract, and the Richtron–Young Farms contract.

In 1979, Richtron put itself in the position of the Youngs and assumed the obligations and duties of the Allred–Young contract, including a $95,000 promissory note. The Youngs were released from all contractual responsibilities. Richtron agreed to make payments of $10,431 to the Allreds on the 15th day of November each year until the balance of the note was paid. Payments to the Allreds were to be made through an escrow agent, defendant Bank of Utah. Therefore, while Young Farms purchased the limited partnership properties from Richtron, its general partner, by a real estate contract payable in annual installments, the protection and preservation of its investment in one property was dependent upon Richtron's fulfilling its obligation to the Allreds. In the most simple terms, Young Farms was to make an annual payment of $52,000 for all the partnership properties to Richtron, which, in turn, was to make an annual payment to the Allreds of $10,431.

Young Farms paid approximately $52,-000 to Richtron as the 1980 payment on their contract. Richtron, however, failed to make the November 15, 1980 payment to the Allreds and withdrew from being the general partner of Young Farms on January 2, 1981. The limited partners amended

the partnership agreement (certificate) and substituted Tower Real Estate, Inc., as the new general partner. *See* Utah Code Ann. § 48–2–25 (1989). Eventually, on February 20, 1981, Richtron paid $10,431 into escrow as the 1980 payment to the Allreds, but the Allreds refused the payment as being late. It is noted that Richtron had spent the $52,000 previously received from Young Farms for other purposes and could only make the $10,431 payment to the Allreds after borrowing most of that amount. After the Allreds refused the $10,431 payment from Richtron, the monies remained in escrow. On December 4, 1981, Paul Richins, on behalf of Richtron, requested that the escrow bank return the $10,431, which it did three days later. Richtron spent the money.

In the course of this litigation, which was commenced in March 1981, the trial court directed defendants Richtron and Paul Richins to pay $10,431 into the court, representing the 1980 payment. At the same time, the court directed plaintiff Young Farms to deposit $10,431 into the court, representing the 1981 note payment to the Allreds. The funds were to be placed in interest-bearing certificates and held pending determination of the parties' rights in the Allred contract and the limited partnership's properties. Further, Young Farms was directed to amend the complaint to bring the Allreds into the action. Rather than submitting cash, Richtron and Paul Richins submitted an irrevocable letter of credit from the Barnes Banking Company in the amount of $10,431 to be drawn on the account of Leo and Lucille Richins, parents of Paul Richins. The letter of credit did not provide for any interest and was issued for a life of only six months, with an automatic extension of six months. The trial court found that Leo and Lucille Richins instructed their bank to issue the letter of credit because they loved and trusted their son, Paul, who had requested them to do it. It was considered a personal favor to Paul and not a loan to Richtron.

Recognizing that the letter of credit did not draw interest, Young Farms requested that cash be paid into court in order to draw interest as required by the previous order. The court directed Richtron and Paul Richins to either submit a letter of credit which would draw interest or pay cash into the court. Upon their failure to comply with this order, the court collected $10,431 from the Barnes Banking Company and ordered that it be held by the clerk of the court "pending the determination of the rights of the parties in the Allred contract and the properties underlying said contract ... to be determined at the time of trial." It appears that the trial court wanted the 1980 and 1981 payments on deposit in court so that those funds would be available for payment to the Allreds (who were being made parties to the action) in case they could be induced or required by the court to accept them and restore the contract to full force and effect.

On September 30, 1983, Young Farms moved for and the court granted a partial summary judgment in favor of Young Farms, ruling that Richtron and Paul Richins had "no right, title or interest or claim to or in the real property which is the subject matter of this suit" and dismissed them from the case. They promptly filed an appeal. On December 7, 1983, Paul Richins wrote a letter to the trial court, requesting a return of the $10,431 that was being held by the court. The court ordered, ex parte, that "if the defendants dismiss the appeal then it would appear proper to return the $10,431 to Leo Richins. As long as the appeal remains in process, the amount should remain with the clerk of the court." Richtron and Paul Richins subsequently dismissed their appeal.

Thereupon, Young Farms requested an evidentiary hearing on the matter of who owned the $10,431, which hearing was held on January 12, 1984. Young Farms claimed the money as being the 1980 payment on the real estate contract, and Richtron and Paul Richins claimed the money on behalf of Leo and Lucille Richins. The court made findings of fact and ruled that the money "should go back to the same source from which it came, which was Leo Richins," but that it should not be removed from the custody of the court until Young Farms had "an opportunity for a final de-

termination of this ruling by the appellate process providing they perfect their rights to appeal." The case was subsequently settled by Young Farms with the remaining defendants, including the Allreds, which resulted in the Allreds agreeing to reinstate the contract. Young Farms has appealed only from the order awarding the $10,431 on deposit to Leo Richins. Leo and Lucille Richins were not parties to this lawsuit, but have been permitted to intervene on this appeal.

## I

Having been dismissed, Richtron and Paul Richins are no longer parties to this lawsuit. This Court, however, has permitted Richtron to make an appearance on appeal regarding the issue of whether Joseph S. Knowlton, Esq., legal counsel for Young Farms and the new general partner, Tower Real Estate, Inc., and all of the limited partners, has the authority to represent the limited partnership on this appeal. Richtron contends that it is the sole liquidating general partner of Young Farms and, as such, is the only entity that may hire and authorize legal counsel to pursue litigation on behalf of the limited partnership. Because Richtron neither hired nor authorized Knowlton to represent Young Farms in this action, it argues that Mr. Knowlton has no authority to maintain this appeal. Richtron assails the substitution of Tower Real Estate, Inc., as a general partner on the ground that it was not permitted under the partnership agreement or Utah's Limited Partnership Act, Utah Code Ann. §§ 48–2–1 through 48–2–27 (1989), without the consent of Richtron.

It is unnecessary for us to determine here the foregoing questions in view of our conclusion in part II of this opinion that the claim of Young Farms to the $10,431 deposit is unavailing. For purposes of this appeal, we assume that Mr. Knowlton has authority and we recognize him as representing the interests of the limited partnership (Young Farms) in this action.

## II

Turning now to the issue of whether the trial court erred in its disposition of the $10,431 deposit, the court, in the early stages of this case, ordered Richtron to make that deposit so it would be available for payment to the Allreds should that later be ordered. The order stated that the funds be held "pending the determination of the rights of the parties in the Allred contract and the properties underlying said contract ... to be determined at the time of trial." However, prior to any trial, Young Farms moved for a partial summary judgment against Richtron and Paul Richins, declaring that they had no right, title, or interest in any of the partnership properties. This motion was based on the fact that the Internal Revenue Service had sold at a tax sale all of the interest of Richtron in the partnership properties to one Milton Goff, who then subsequently assigned his interests to Young Farms. The court granted the motion, decreeing that Richtron and Paul Richins had no right, title, or interest in the partnership properties, and dismissed them from the lawsuit. In neither the motion for nor the court's order granting the partial summary judgment was any mention or reference made to the $10,431 on deposit. Subsequently, Paul Richins wrote a letter to the trial judge requesting return of the deposit. The court ordered, ex parte, that if Richtron and Paul Richins would dismiss their appeal from the partial summary judgment, "then it would appear proper to return the $10,431 to Leo Richins." They dismissed their appeal, but the court did not disburse the deposit because Young Farms requested an evidentiary hearing on the question of disposition of the deposit. Upon hearing, the trial court confirmed its earlier ruling that the deposit should be returned to Leo Richins.

We find no abuse of discretion on the part of the trial court. It is true, as pointed out by Young Farms, that the deposit represented the 1980 payment on the Allred contract which the Allreds had refused to accept and that Young Farms had been faithful in making its 1980 payment to Richtron on their contract. We are mindful, too, that when Young Farms did not

receive the deposit, it had to raise other money to make the 1980 payment to the Allreds when settlement with them was reached. However, those facts do not necessarily dictate that the trial court was required to award the funds to Young Farms to be used for payment to the Allreds. It is significant that Young Farms moved for and was granted a partial summary judgment which divested Richtron of all interest in the partnership properties. This judgment also dismissed Richtron from the lawsuit without any adjudication of an accounting between Richtron and the limited partners. It appears that by clearing out the interest of Richtron in the partnership properties, the limited partners may well have realized a financial gain since Richtron had earlier agreed to purchase the properties for a lesser amount than it later sold the properties for to the limited partnership. Under these circumstances, the trial court could have reasonably concluded that it would not be equitable to require Richtron to provide the funds for the delinquent 1980 Allred payment when it had just sustained a loss of all of its interest in that property. In addition, the granting of the partial summary judgment upon motion of Young Farms cut short any opportunity for an accounting which would have shown the financial relationship of Richtron to the limited partners. Young Farms has cited no authority and we have been unable to find any that would require Richtron to make up a delinquent payment under these circumstances.

We conclude that the trial court did not abuse its discretion in returning the deposit to Leo Richins, who had made it so that his son could pursue the litigation. When the litigation was cut short and took the turn that it did, the trial court considered the equities of the parties at that juncture and was not required to order Richtron to make the delinquent payment.

Judgment affirmed.

HALL, C.J., and STEWART and DURHAM, JJ., concur.

ZIMMERMAN, Justice (writing separately):

I concur that Leo Richins should receive the funds on deposit, but not for the reasons expressed by the majority. Rather, I am unpersuaded that Mr. Knowlton, legal counsel for the new general partner, Tower Real Estate, Inc., who has prosecuted this appeal as counsel for Young Farms, the limited partnership, has the authority to act for Young Farms. As I understand the rather convoluted proceedings below, Richtron has been adjudged the liquidating general partner of Young Farms. Richtron has not hired Mr. Knowlton nor authorized the taking of this appeal. Therefore, this matter is not properly before us. I would dismiss the appeal. This would have the effect of leaving in place the trial court order the majority affirms.